IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| RALPH DAHM AND | ) | |
| PATRICIA BEST DAHM, | ) | |
| | ) | |
| Plaintiffs, | ) | No. 06 C 5031 |
| v. | ) | |
| | ) | Wayne R. Andersen |
| FIRST AMERICAN TITLE INSURANCE | ) | District Judge |
| COMPANY, as assignee of the Small Business | ) | |
| Administration; FIRST GLOBAL PACIFIC | ) | |
| FUNDING, INC., d/b/a/ First Pacific Financial; | ) | |
| J&J LENDING CORP, d/b/a First Pacific | ) | |
| Financial; DANA CAPITAL GROUP, INC., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs Ralph and Patricia Dahm ("plaintiffs" or the "Dahms") filed a five-count First Amended Complaint ("complaint") against defendants First Global Pacific Funding, Inc. ("First Global"), First American Title Insurance Co. ("First American"), J&J Lending Corp. ("J&J"), and Dana Capital Group, Inc. ("Dana"), seeking various remedies related to a mortgage dispute. First American and Dana answered the complaint in February 2007. First Global and J&J moved to dismiss plaintiffs' claims for negligent failure to procure title insurance (Counts III), negligent misrepresentation (Count IV) and a violation of the Illinois Consumer Fraud and Deceptive Business Practices Act (Count V), pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6). For the reasons set forth more fully below, the motion to dismiss is granted in part and denied in part.

*I. Factual Background*

This case stems from a mortgage dispute over plaintiffs' home in Wheaton, Illinois (the

"property"). According to plaintiffs, defendants First Global and J&J (collectively "defendants") had some type of contractual relationship to jointly provide mortgage services to plaintiffs. Defendants originated and brokered the loan at issue in this case. In 2004, defendants' representative, Jesse Cavett ("Cavett"), contacted the Dahms regarding the possibility of refinancing the mortgage on their property. At that time, Real Estate Mortgage and Financial Corp. ("REMFC") had a mortgage on the Dahms' property. On October 14, 2004, Mr. Dahm informed Cavett, through oral conversations and a written letter, that SBA might also have a mortgage on the property. The next day, October 15, 2004, Cavett wrote a letter back to Mr. Dahm certifying that the SBA Mortgage was no longer a good lien on the property and that the title company, defendant First American, had certified that fact and that there were no current title issues related to the SBA Mortgage.

That same month, Mr. Dahm instructed Cavett to procure title insurance that would indemnify and defend the Dahms against any claims by the holder of the SBA Mortgage. On October 18, 2004, Cavett confirmed that he had procured title insurance for the Dahms that would protect them from any claims on the SBA Mortgage. Cavett faxed Mr. Dahm a title commitment stating that an owner's policy was to issue and a letter stating that there were no current title issues with the property for which the Dahms would be liable.

Based on the above representations, the Dahms chose to refinance their mortgage with People's Choice. In early 2005, the Dahms paid off the REMFC mortgage with funds from People's Choice. Contrary to defendants' representations, at the time the Dahms refinanced with People's Choice, defendants had not procured the Dahms a title insurance policy that would insure them against claims by the holder of the SBA Mortgage. In August or September 2005,

First American became the holder of the SBA Mortgage. On September 19, 2005, First American contacted the Dahms and asserted that the SBA Mortgage was a valid lien on the property. First American threatened to file a complaint for foreclosure on the property if the Dahms did not pay it to the lien. Thereafter, the Dahms initiated the instant case.

## II. Legal Analysis

### A. Rule 12(b)(6) Standard of Review

Rule 12(b)(6) permits motions to dismiss a complaint for "failure to state a claim upon which relief can be granted. . ." FED. R. CIV. P. 12(b)(6). To survive a Rule 12(b)(6) motion, "the complaint need only contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Equal Employment Opportunity Comm'n v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007)(citation omitted). The language in Rule 12(b)(6) "impose[s] two easy to clear hurdles. First, the complaint must describe the claim in sufficient detail to give the defendant 'fair notice of what the ... claim is and the grounds upon which it rests.' Second, its allegations must plausibly suggest that the plaintiff has a right to relief, raising that possibility above a 'speculative level'; if they do not, the plaintiff pleads itself out of court." *Id*. (citations omitted). In determining whether plaintiffs have cleared these hurdles, the court assumes "that all the allegations in the complaint are true." *Jennings v. Auto Meter Prods., Inc.*, 495 F.3d 466,472 (7th Cir. 2007) (citations omitted). Now, the court turns to the specific counts in the complaint that defendants seek to dismiss.

### B. Negligent Failure to Procure an Owner's Title Policy (Count III)

In Count III, the Dahms claim that defendants, as their mortgage brokers, had a duty to procure the type of title insurance policy for the property that the Dahms requested. Specifically,

the Dahms requested a policy that would insure them against any claims from the holder of the SBA Mortgage. The Dahms allege that defendants negligently failed to procure such a policy. Defendants seek to dismiss this claim on two grounds. First, defendants argue this claim is barred by the *Moorman Doctrine*. Second, defendants contend plaintiffs failed to allege any duty on the part of defendants.

We begin with the parties' arguments regarding the *Moorman Doctrine*. The *Moorman Doctrine* is an economic loss doctrine adopted by the Illinois Supreme Court in *Moorman Mfg. Co. v. National Tank Co.,* 91 Ill.2d 69, 88 (1982). With limited exceptions, the *Moorman Doctrine* prohibits plaintiffs from recovering in tort for purely economic losses. *Id*. In other words, *"Moorman* prevents the use of tort measures of damages in what are really contract cases." *Decatur Memorial Hosp. v. Connecticut General Life Ins. Co*., 990 F.2d 925, 928 (7th Cir. 1993). In Count III, plaintiffs seek purely economic losses under a tort theory – negligence. Accordingly, this claim is dismissed with prejudice because it is barred by the *Moorman Doctrine. See Gage-Wilson v. Chase Manhattan Mort. Corp.*, 2006 WL 1431047, *2, No. 05 C 5801 (N.D.Ill. May 17, 2006).

The Dahms' argument that one of the limited exceptions to the *Moorman Doctrine* applies to their negligence claim is meritless. The exception cited by the Dahms only applies to claim for negligent misrepresentation, not claims for negligent procurement. In *Moorman*, the Illinois Supreme Court recognized an exception to the economic loss doctrine for cases "where the plaintiff's damages are proximately caused by a negligent misrepresentation by a defendant in the business of supplying information for the guidance of others in their business transactions." *Fireman's Fund Ins. Co. v. SEC Donohue, Inc.,* 176 Ill.2d 160, 165 (1997). Construing this

"commercial information supplier" exception narrowly, as we must, the court finds that it does not apply to plaintiffs' negligent procurement claim. *See Gerdes v. John Hancock Mut. Life Ins. Co.*, 712 F. Supp. 692, 698 (N.D.Ill. 1989). The court further notes that plaintiffs' reliance on *Kanter v. Deitelbaum* is misplaced. 271 Ill.App.3d 750, 753 (Ill. App. 1st Dist. 1996). *Kanter* involved claims of actual fraud and negligent misrepresentation and the holding was limited to "the facts and circumstances" of that case. *Id*. at 755. Therefore, the holding in *Kanter* is not applicable to the instant negligent procurement claim.

Finally, to the extent plaintiffs argue in their response brief to the motion to dismiss that their negligent procurement claim is really a professional negligence claim based on an "extra-contractual duty," that argument also fails. Illinois courts have allowed tort recovery against attorneys and accountants based on an "extra-contractual duty" theory. *Congregation of the Passion v. Touche Ross & Co.*, 159 Ill.2d 137, 159-60 (1994). However, beyond that narrow range of professionals, courts have not imposed an extra-contractual duty on other professionals and have held that the *Moorman Doctrine* applies to bar various tort claims. *Bank One, Oklahoma, N.A. v. Trammell Crow Services, Inc.*, 2003 WL 23019173, No. 03 C 3624 (N.D.Ill. Dec. 23, 2003). Because we find that Count III is barred by the *Moorman Doctrine*, we will not address defendants' argument that the Dahms failed to adequately plead the duty element of their negligence claim.

### C. Negligent Misrepresentation (Count IV)

Similar to the negligent procurement claim, defendants move to dismiss plaintiffs' negligent misrepresentation claim on the grounds that it is barred by the *Moorman Doctrine* and that plaintiffs have not plead all the necessary elements of a negligent misrepresentation claim.

5

The Dahms argue that this claim is not barred by the *Moorman Doctrine* because it falls within the commercial information supplier exception referenced above. They also contend that they have plead all the necessary elements of a valid negligent misrepresentation claim. The court agrees with plaintiffs and denies defendants' motion to dismiss as to Count IV.

Count IV involves a claim for negligent misrepresentation, so the commercial information supplier exception may apply. However, it will only apply if defendants are in the business of supplying information for the guidance of others in their business transactions. *LeDonne v. Axa Equitable Life Ins. Co.*, 411 F. Supp. 2d 957, 963 (N.D.Ill. 2006). Such an inquiry generally requires further factual development than is available at this stage in the case and often is not appropriate for consideration on a motion to dismiss. *Menard, Inc. v. U.S. Equities Development, Inc.*, 2002 WL 31050160, No. 01 C 7142 (N.D.Ill. Sept. 13, 2002).

According to the complaint, defendants are mortgage brokers who are "in the business of supplying information regarding loans, loan processing, and matters associated with mortgages." *Compl*. at ¶ 45. As plaintiffs' mortgage brokers, defendants allegedly made misrepresentations regarding the possible validity of the SBA Mortgage, the effect and reliability of a preliminary report from a title company, and the effect of plaintiffs' title insurance policy. *Compl*. at ¶ 47.

There is no relevant case law addressing whether the commercial information supplier exception applies to mortgage brokers in their dealings with prospective borrowers. Accordingly, the parties cite case law applying this exception to other professionals. Defendants rely on *First Midwest Bank v. Stewart Title Guaranty Co.*, 218 Ill.2d 326 (2006). In *First Midwest*, the Illinois Supreme Court found that a title insurance company is not considered to be in the business of supplying information when it issues a title commitment or a policy of title

6

insurance. *Id*. at 337. Accordingly, the commercial information supplier exception does not apply and the *Moorman Doctrine* bars a negligent misrepresentation claim against title insurers. *Id*. at 337. Defendants argue that if the title insurance company cannot be liable for negligent misrepresentation, then "certainly a third party mortgage broker who simply passes along a title commitment and statement of a title insurer . . . cannot be liable either." *Defs.' Mem*. at 9.

Defendants' argument misses the mark. The allegations in the complaint, which we must take as true at this stage in the proceedings, are not that defendants simply passed along a title commitment and statement of a title insurer. The Dahms allege that defendants, not just the title company, certified the state of title to the property and the invalidity of the SBA Mortgage, which could constitute a negligent misrepresentation. *See Compl*. at ¶¶ 22, 24, 47.

Further, although Illinois courts and other courts in this district have not specifically addressed whether the commercial information supplier exception applies to mortgage brokers in their dealings with borrowers, they have found that the exception applies to other types of brokers. *See Ivanhoe Financial, Inc. v. Highland Banc Corp.*, 2004 WL 546934, No. 03 C 7336 (N.D.Ill. Feb. 26, 2004)(exception applies to mortgage broker in dealings with lender); *Menard, Inc. v. U.S. Equities Development, Inc.*, 2002 WL 31050160, No. 01 C 7142 (N.D.Ill. Sept. 13, 2002)(exception applies to real estate brokers)*; Lake County Grading Co. of Libertyville, Inc. v. Great Lakes Agency, Inc.,* 226 Ill.App.3d. 697, 702 (Ill. App. 2nd Dist. 1992)(exception applies to insurance broker); *Zimmerman v. Northfield Real Estate, Inc.,* 156 Ill.App.3d 154, 164 (Ill. App. 1st Dist. 1986)(exception applies to real estate broker); *Richmond v. Blair*, 142 Ill.App.3d 251, 257 (Ill. App. 1st Dist. 1985)(exception applies to real estate broker). Therefore, at this stage in the proceedings we do not find that Count IV is barred by the *Moorman Doctrine*.

The court also finds that the Dahms have sufficiently plead the elements of their negligent misrepresentation claim. "To state a claim for negligent misrepresentation, a plaintiff must allege: (1) a false statement of material fact; (2) carelessness or negligence in ascertaining the truth of the statement by the party in reliance on the truth of the statement; (3) an intention to induce the other party to act; (4) action by the other party in reliance on the truth of the statement; (5) damages to the other party resulting from such reliance; and (6) a duty on the party making the statement to communicate accurate information." *First Midwest*, 218 Ill.2d at 334-35 (2006).

Defendants argue that plaintiffs' conclusory allegation in the complaint that defendants' numerous misrepresentations "were made with recklessness or negligence" does not adequately plead the second element of the claim. *Compl*. at ¶ 48. We disagree. "[P]leading in federal court need not allege facts corresponding to each 'element' of a" cause of action. *Doe v. Smith*, 429 F.3d 706, 708 (7th Cir. 2005). The Dahms have plead sufficient details to give the defendants "fair notice of what the ... claim is and the grounds upon which it rests" and to plausibly suggest they are entitled to relief. *EEOC v. Concentra,* 496 F.3d at 776. Accordingly, the motion to dismiss is denied as to Count IV.

### D. Violation of the Illinois Consumer Fraud and Deceptive Business Practices Act (Count V)

Finally, defendants seek to dismiss plaintiffs' claim for a violation the Illinois Consumer Fraud and Deceptive Business Practices Act ("Consumer Fraud Act"), 815 ILCS 505/1 *et. seq*. To plead a valid claim for a violation of the Consumer Fraud Act, plaintiffs must allege "(1) a deceptive act or practice; (2) intent on the defendants' part that plaintiff rely on the deception, and (3) that the deception occurred in the course of conduct involving trade or commerce."

*Siegel v. Levy Organization Development Co.*, 153 Ill.2d 534, 542 (1992). Illinois law is clear that the purpose of the Act would be undercut if plaintiffs could convert any suit for breach of contract into a consumer fraud action. *Ross v. Culver Franchising System, Inc.*, 2004 WL 1898235, *10, No. 01 C 3830 (N.D.Ill. Aug. 16, 2004). Further, "a 'deceptive act or practice' involves more than the mere fact that a defendant promised something and then failed to do it." *Id.* (quoting *Zankle v. Queen Anne Landscaping,* 311 Ill.App.3d 308, 311-12 (Ill. App. 2nd Dist. 2000).

In Count V, plaintiffs allege that the statements of defendants' agent, Cavett, described in paragraphs 21-25 of the complaint amount to material misrepresentations and deceptive practices in violation of the Consumer Fraud Act. Plaintiffs do not specifically identify the purportedly deceptive practices. Instead, they leave it to defendants and the court to determine what statements by Cavett, if any, described in paragraph 21-25 of the complaint could violate the Consumer Fraud Act. After reviewing paragraphs 21-25 of the complaint, the court finds that the statements therein are not sufficient to state a violation of the Consumer Fraud Act.

The Dahms claim that defendants had a contractual duty to procure a title policy for them that would protect them from claims on the SBA Mortgage and that defendants failed to procure such a policy. *Compl*. at ¶ 41. Those facts could give rise to a breach of contract claim, although plaintiffs have not plead such a claim in this case. However, the fact that defendants contracted or promised to provide the Dahms with a specific title insurance policy and failed to follow through, without more, does not constitute a deceptive act or practice in violation of the Consumer Fraud Act. *See Ross,* 2004 WL 1898235 at *10. Further, defendants' representations about the validity of the SBA Mortgage lien may amount to a negligent misrepresentation, but

9

The Dahms have not alleged any facts to suggest the defendants engage in a deceptive act or practice. Therefore, the motion to dismiss is granted as to Count V. However, the dismissal is without prejudice because plaintiffs may be able to amend their complaint to allege a deceptive practice.

### *III. Conclusion*

In summary, plaintiffs' claim for negligent procurement (Count III) is dismissed with prejudice. Plaintiffs' claim for a violation of the Consumer Fraud Act (Count V) is dismissed without prejudice. Defendants' motion to dismiss is denied as to plaintiffs' negligent misrepresentation claim (Count IV). Plaintiffs are given leave to file an amended complaint on or before April 19, 2008. It is so ordered.

*/s/ Wayne Andersen*
Wayne R. Andersen
District Judge

Dated: April 9, 2008