|  |  |
|---|---|
| RALPH DAHM<br>AND PATRICIA BEST DAHM,<br>Individuals<br>         Plaintiffs,<br>v.<br>FIRST AMERICAN TITLE INSURANCE<br>COMPANY, as assignee of the Small<br>Business Administration, a California<br>Corporation, *Et allis*<br>         Defendants. | 2006 C 5031<br>Judge Andersen<br><br>Magistrate Judge Mason |

**FILED JUN 09 2008 6-9-2008 WAYNE R. ANDERSEN U.S. DISTRICT COURT JUDGE**

## Dahms' Motion for Judgment Pursuant to Rule 52(c) of the Federal Rules of Civil Procedure

### Introduction

The Dahms now move for judgment pursuant to Rule 52(C) and provide the following facts and law in support of their motion.

### Facts

**A. Parties and Important Non-parties.**

1. Ralph and Patricia own the Property at issue in this case. In 1999, Ralph and Patricia gave a mortgage to Old Kent Bank in the Property to secure the debt of a third party. Ralph and Patricia also personally guaranteed the debt.

2. Ralph and Patricia declared bankruptcy in 2001 by filing a petition on May 31, 2001. Debts (including the Old Kent Note) were discharged on September 17, 2001.

3. In June, 2002, Old Kent Bank's successor in interest assigned the mortgage and debt to the Small Business Administration, an agency of the United States of America ("the SBA").

3. The SBA was the holder of the debt and mortgage during the Provident foreclosure proceedings on the Property described below

4. In 2005, after termination of the Provident foreclosure described below, the SBA assigned the debt and mortgage to First American. First American is the current holder of the mortgage and debt.

1

5. Non-Party Provident Bank also held a mortgage on the Property separate from that of Old Kent Bank. Provident Bank moved to foreclose the Dahms and SBA's interests in the Property in December, 2002.

6. Non-party, Real Estate Mortgage and Financial Corp. ("REMFC") became the Dahms' new mortgagee and paid off the amounts owed to Provident.

**B. The Initial Loan and Mortgage from Old Kent Bank and the Initial Provident Mortgage.**

7. In June, 1999, the Dahms personally guaranteed a note to Old Kent Bank from a third party. The note was secured by a mortgage ("Old Kent Mortgage") on the Property.

8. June, 1999: The language of the Old Kent Mortgage specifically excepted the Dahms' warranting title against "encumbrances of record", (including a senior mortgage).

9. Old Kent Bank agreed to subordinate its mortgage on the Property to Provident Bank. The Old Kent Mortgage was subordinate to a second mortgage on the Property, that of Provident Bank.

**C. The Dahms' Bankruptcy.**

10. In 2001, the Dahms declared bankruptcy listing Old Kent Bank as a creditor. On September 17, 2001, the Dahms' guarantees to Old Kent Bank (and all other obligations to Old Kent Bank) were discharged by the Bankruptcy Court. The Dahms' debt to Old Kent Bank as well as the Dahms' personal covenants in the mortgage were discharged.

**D. The SBA Becomes the Holder of the Mortgage.**

11. On June 5, 2002, The Old Kent Mortgage was assigned to the SBA (hereinafter the mortgage will be referred to as the "Old Kent/SBA Mortgage").

**E. The Provident Bank Foreclosure Proceedings in the Circuit Court.**

12. Later in 2002, Provident Bank sued to foreclose its mortgage on the Property in the Circuit Court of the 18th Judicial Circuit, DuPage County and joined the SBA as a defendant to foreclose the SBA's interest in the Property.

2

13. On May 13, 2003, Judge Bonnie Wheaton entered an order of default against the SBA.

14. The Complaint sought the extinguishment of all claims against the property (if no redemption occurred), and Provident Bank's complaint was confessed against the SBA. Judge Wheaton thus granted Provident Bank the only relief requested in the complaint against the SBA, namely foreclosure of the Old Kent/SBA Mortgage.

15. Eventually, a judgment of foreclosure was entered, a judicial sale held, and the sale confirmed. The DuPage County Sheriff issued a Sheriff's deed for the Property which was delivered to Provident Bank in January or February, 2004. The Judgment of foreclosure did not refer to or recognize the Old Kent/SBA Mortgage.

E. **The Dahms Obtain Title to the Property After the Issuance and Delivery of the Sheriff's Deed.**

16. After the judgment of foreclosure and confirmation of sale and issuance of the deed, the Dahms paid all amounts owed to Provident Bank and the Sheriff's Deed issued to Provident Bank was cancelled on February 3, 2004, the foreclosure judgment order vacated, and the foreclosure action dismissed.

F. **The SBA's Agreement with a New Mortgagee, REMFC.**

16. The SBA executed a subordination agreement with the new mortgagee, subordinating the SBA's interest (if any) to the new mortgagee.

17. The subordination agreement failed to address or even mention the default order or the issuance of the Sheriff's deed.

18. The subordination agreement was an agreement between the new mortgagee and the SBA, and the Dahms were not a party to the agreement. The Dahms did not sign the subordination agreement. The only person who signed the subordination agreement was a representative of the SBA.

19. The SBA did not rely on the Dahms' behavior in any way in determining whether to enter into the subordination agreement.

G. **First American Becomes the Holder of the (Extinguished) Old Kent/SBA Mortgage, and the Current Foreclosure.**

20. On August 30, 2005, the SBA assigned the extinguished Old Kent/SBA Mortgage to First American.

## H. The Dahms' Bankruptcy and Its Effects

21. After a bankruptcy discharge, there is a permanent injunction against enforcing any personal obligation against the Dahms. 11 U.S.CA. 524(a)(2). Discharged "debts" under the Bankruptcy Code are defined so broadly so as to discharge any and all personal obligations in the Old Kent/SBA mortgage and the note. 11 U.S.C.A. 101(5), 101(12).

22. The Dahms personally guaranteed a corporate note which was further secured by a mortgage. A personal guaranty of a corporate note, even if the note is secured by a mortgage, is a separate contract from the note and is an unsecured claim and was properly listed as such on the Dahms' Bankruptcy Schedule. *In Re Keenan*, 15 F.2d 1006 (7th Cir. 1926). Old Kent Bank never challenged this categorization. The limitations period to challenge the discharge is long past. 11 U.S.C.A. 727(e) (any challenge to the discharge must be brought, at the latest, within one year of the discharge). The personal obligations of the Dahms to Old Kent Bank, and its assignees, the SBA and, through the SBA, First American, were permanently discharged in the bankruptcy.

23. Under Illinois law, a mortgage document consists of: (1) the granting of a lien in the property; and (2) covenants (agreements by the mortgagor to do certain things) which are no different from any other personal obligations. *Schifferstein v. Allison*, 123 Ill. 662, 665-666 (1888); *McMillan v. McCormick*, 117 Ill. 79, 85 (1886).

24. The Old Kent/SBA Mortgage contained numerous uniform covenants which, under Illinois law, were personal obligations of the Dahms and thus, were discharged in the bankruptcy. Thus all promises to pay, warranties, and other personal covenants in the Old Kent/SBA Mortgage are unenforceable against the Dahms.

25. Any attempt by First American to rely upon the discharged personal obligations of the Dahms under the Old Kent/SBA mortgage is illegal under the Bankruptcy Code and can be given no effect.

## I. The Provident Bank Foreclosure and its Extinguishment of the Old Kent/SBA Mortgage.

### *i.* Effect of a Default Order Against the United States During the Foreclosure Proceedings.

26. The Illinois Code of Civil Procedure applies to mortgage foreclosure actions unless there is some conflict with the IMFL. 735 ILCS 5/15-1107. "Judgments by default have the same validity and force as those rendered upon a trial of the issues." *Monreal v. Sciotino*, 238 Ill.App.3d 475, 479 (1st Dist. 1992). A default order entered in a mortgage foreclosure proceeding will terminate the defaulted party's interest in the property at the end of the foreclosure proceedings because it becomes a default judgment at the end of the proceedings. 735 ILCS 5/15-1506(c). *Mid-America Federal Savings and Loan Association v. Liberty Bank*, 204 Ill.App.3d 995, 1000-1001 (2nd Dist. 1990).

27. A final order under Illinois law is one which disposes of a party's rights on some definite part of a controversy. *City of Chicago v. Ramirez*, 366 Ill.App.3d 935, 852 N.E.2d 312, 320-321 (1st Dist. 2006). Under this definition, the default order in this case ordered confessed a complaint seeking only liquidated and ascertainable relief- the foreclosure of the lien if no redemption occurred. When no redemption occurred, the default order became a final judgment.

28. In cases where multiple parties or multiple claims are being adjudicated, a final order becomes appealable only after the entire litigation is disposed of. *Santana v. Zipperstein*, 142 Ill.App.3d 386, 388 (1st Dist. 1986). The final default order then becomes a binding judgment after the entire litigation is terminated. *Mortgage Electronic Systems v. Gipson*, 379 Ill.App.3d 622___, 884 N.E.2d 796, 800 (1st Dist. 2008)(after confirmation of sale, default orders become default judgments binding on defaulted parties); *Mid-America Federal Savings and Loan Association v. Liberty Bank*, 204 Ill.App.3d 995, 1000-1001 (2nd Dist. 1990) (at termination of foreclosure proceedings by judgment of foreclosure and sale, default orders become default judgments binding on defaulted parties).

29. Here, the default order entered against the SBA provided for all relief requested by Provident Bank, and confessed the allegations of the complaint against the SBA. The complaint requested foreclosure of the SBA lien- i.e. a barring of all claims for lien of any party if no redemption occurred. The default order was never vacated and no redemption occurred. The default order thus became a final default judgment when

5

the foreclosure action was terminated without a redemption. Moreover, After the Sheriff's deed issued and was delivered, any action by the Circuit Court in vacating any order had no effect on the extinguishment of the SBA's claim to the Property through the Old Kent/SBA Mortgage. 735 ILCS 5/15-1509(c).

### ii. Under the IMFL, the Entry of a Judgment of Foreclosure Extinguishes a Defaulted Party's Mortgage

30. Upon entry of the judgment of foreclosure, the rights in the real estate of all parties to the foreclosure are merged in the judgment of foreclosure. *In Re Josephs*, 85 B.R. 500, 506 (Br. N.D. Ill. 1988) *aff'd* 93 B.R. 151. The rights of the parties in the property are converted into and replaced by judgment liens by the judgment of the foreclosure. 735 ILCS 5/15-1506(i)(1), *In Re Josephs*, 85 B.R. at 505. A foreclosure judgment is a final order as to the matters it adjudicates <u>and as to the rights of the parties in the real estate</u>; claims for lien by the parties in the real estate; and adjudication of the debts owed by the mortgagor. *In Re Walker*, 232 B.R. 725, 733 (Br. N.D. Ill. 1999); *Bell Federal Savings and Loan Association v. Bank of Ravenswood*, 203 Ill.App.3d 219, 223 (1st Dist. 1990). A party which fails to have its lien included in the judgment of foreclosure fails to obtain a "judicial recognition" by the court in the foreclosure proceeding. In the absence of such a "judicial recognition" of the lien, that party's rights in the real estate are extinguished. 735 ILCS 5/15-1506(i)(2). To quote the IMFL:

> Upon the entry of the judgment of foreclosure, the rights in the real estate subject to the judgment of foreclosure of . . . all persons made a party in the foreclosure. . . <u>shall be solely as provided for in the judgment of foreclosure</u> and in this Article. 735 ILCS 5/15-1506(i)(2) (emphasis added).

### iii. General Principals Regarding the Effect of the Mortgage Foreclosure and Delivery of a Deed from a Judicial Sale Under the IMFL

31. All mortgage foreclosure actions (after 1987) in Illinois are governed by the Illinois Mortgage Foreclosure Law ("IMFL"). 735 ILCS 5/15-1101, 1106(a)(1). In Section 15-1509 of the IMFL, the General Assembly clearly delineated the key moment

6

in a foreclosure action wherein parties' claims for lien are barred and their liens extinguished. 735 ILCS 5/15-1509. Specifically:

> Any vesting of title . . .by deed pursuant to subsection(b) of 15-1509. . . shall be an entire bar of. . .all claims of parties to the foreclosure. . .,
> 735 ILCS 5/1509(c).

32. Vesting of title is governed by Section 15-1509(b), which states:

> Delivery of the deed executed on the sale of the real estate, <u>even if the purchaser. . .is a party to the foreclosure, shall be sufficient to pass the title thereto</u>. [emphasis added].
> 735 ILCS 5/15-1509(b).

33. After title is vested in the purchaser only a party to the foreclosure who has either: (1) properly proved up its lien and perfected an appeal, *See* 735 ILCS 5/1509(a); (2) redeemed the property pursuant to statute *See e.g.* 735 ILCS 5/15-1604; or (3) has some other statutory basis for which the claim for lien can survive. Otherwise, the property is free and clear from a party's claim for lien. 735 ILCS 5/15-1509(c). The SBA did not do any of these things in the state court and therefore did not preserve its rights in the Property.

### iv. The Delivery of the Deed

34. The delivery of a deed constitutes an entire bar to any claim for lien by any party to the foreclosure. 735 ILCS 5/15-1509(c ). After delivery of a deed, a judge may revisit his or her orders granting a default judgment, judgment of foreclosure, and/or other previous orders. But any subsequent actions modifying or vacating the judgment or orders will have no effect <u>as to extinguishment of the parties' claims against the property and the parties' interests in the property</u>. 735 ILCS 5/15-1509(c). Indeed, even an improperly served party can obtain relief only against the proceeds of sale. *Id.* The Illinois courts recognize that statutes can serve to limit a court's powers to vacate orders after issuance of a deed. *See In Re Application of County Treasurer*, 378 Ill.App.3d 842 (1st Dist. 2007); *In Re Application of County Treasurer*, 267 Ill.App.3d 993 (1st Dist. 1994) (trial court's power to affect title of property subject to tax deed proceedings is limited after issuance of the deed by statute).

7

35. The ultimate confirmation of a sale cures all procedural irregularities associated with the foreclosure proceedings. *Illinois Midwest Join Stock Land Bank v. McMahon*, 249 Ill.App. 555 (4th Dist. 1928). Thus, in this case, any flaw in the foreclosure proceedings was cured by the ultimate confirmation of the sale.

    iv.    **The Actual Transfer of Title Extinguished The First American Mortgage**

36. Delivery of a deed is an absolute grant of title to the grantee. 735 ILCS 5/15-1509(c), *James Duncan v. William Wickliffe*, 5 Ill. 452 (1843). When the unrecorded deed is cancelled, surrendered, or destroyed by agreement with the consent of all parties to the deed and with the intention of revesting the former owner with title, this action has the effect of revesting in the former owner equitable title (but not legal title). *Potter v. Barringer*, 236 Ill. 224, 229 (1908), *Crossman v. Keister*, 223 Ill. 69, 81-82 (1906); *Gillespie v. Gillespie*, 159 Ill. 84, 87-88 (1895). A court can then revest legal title in the former owner if it appears equitable to do so. *Gillespie v. Gillespie*, 159 Ill. at 87-88, *Sanford v. Finkle*, 112 Ill. 146, 150-152 (1884).

37. Here, a deed was issued and delivered to Provident Bank. Provident Bank was paid all amounts necessary to transfer title to the Dahms. Through an agreed order, the deed was cancelled by agreement of the Dahms and Provident Bank. The Court approved the cancellation in an agreed order and revested title in the Dahms. <u>The Court never vacated the deed.</u>

38. The original vesting of title in Provident Bank by the sheriff's deed extinguished the Old Kent/SBA Mortgage. After delivery of the deed, the subsequent transfer of title from Provident Bank to the Dahms (and agreed court order) could not have recreated SBA's extinguished claim for lien against the Property. 735 ILCS 5/15-1509(c). Cancelling an instrument which transfers title and holding it for naught is not the same as rendering a an instrument void. *Wuller v. Chuse Grocery Store*, 147 Ill.App. 224 (4th Dist. 1909). Rather, canceling a deed and holding it for naught is a court ordered conveyance back to the original grantor through surrender of the instrument by the grantee (even if the underlying transaction to transfer title is voided by the Court). *Id.*

    J.    **First American's Defenses**

### i. The Federal Right of Redemption Has No Effect on the Provident Bank Mortgage Foreclosure Proceedings in this Case.

39. The above stated foreclosure proceedings are not affected by the Federal right of redemption under 28 U.S.C.A. 2410(a) because the SBA never made any attempt to redeem under the Federal law.

40. Moreover, the federal statute specifically states that foreclosure proceedings will extinguish federally held mortgages. To quote the statute:

"...The United States may be named a party in any civil action or suit...in any State court having jurisdiction of the subject matter...to foreclose a mortgage or other lien upon...real or personal party on which the United States has or claims a mortgage...". 28 U.S.C.A. 2410(a).

"A judgment or decree in such action or suit [the State court foreclosure action] shall have the same effect respecting the discharge of the property from the mortgage or other lien held by the United States as may be provided with respect to such matters by the local law of the place where the court is situated..." 28 U.S.C.A. 2410(c). (explanation not part of original quotation).

41. The case law as set down by the Supreme Court also supports this position. The purpose of this section is to allow for private persons to eliminate federal liens through state law procedures. *United States v. Brosnan*, 363 U.S. 237, 246-252 (1960)[1]. Thus, If the above described foreclosure proceedings would extinguish a private mortgagee's mortgage, the foreclosure proceedings would also eliminate the Old Kent/SBA mortgage held by the SBA- and by implication, any right to redeem arising from the litigation.

42. The default judgment, judgment of foreclosure, and sheriff's deed extinguished the mortgage and all SBA rights in the property.

43. Even if the Court holds that some Federal right of redemption survived the extinguishment of the federal lien by default judgment and delivery of sheriff's deed, the Dahms' reacquisition of title in the Property would not have eliminated or hindered the

---

[1] Although Section 2410(c) was amended in 1966 after *Brosnan* was handed down, the specific purpose of the amendment was to insure that state foreclosure procedures for extinguishment of liens would actually extinguish the lien held by the federal government. Senate Report No. 1708, Federal Tax Lien Act of 1966, P.L. 89-719, pg. 3755. The purpose of the amendment was neither to address or overrule *U.S. v. Brosnan*, which is thus still binding precedent on this Court.

federal right of redemption in any way. *United States v. John Hancock Mutual Life Insurance*, 364 U.S. 301, 306 (1960) (Kansas mortgagors reacquired title in their property pursuant to Kansas state law right of redemption. Federal right of redemption preempted state right, and if Federal government chooses to redeem, Federal government's right to title in the property trumps the mortgagor's reacquired title). When a mortgagor reacquires title to a property under state law, the mortgagor's right to the Property is automatically trumped by and subject to the United States' right of redemption. *Id.* at 309. Title to property formerly secured by the federal lien is automatically subject to the United States' redemption rights under Section 2410(c). *Id.* at 304-305 (United States has right to redeem regardless of a mortgagor reacquiring title pursuant to state law).

44. The SBA never attempted to redeem. This issue is a red herring.

### ii. First American is Not Entitled to Estoppel

45. In order for the defense of equitable estoppel to arise, there must be a misrepresentation or concealment of material fact by a party against whom the estoppel is alleged. *Lowenberg v. Booth*, 330 Ill. 548, 555 (1928). Moreover, there must be reasonable reliance by the party claiming estoppel. *Trossman v. Philipsborn*, 373 Ill.App.3d 1020, 1040-1041 (1st Dist. 2006), *appeal denied*.

46. Equitable estoppel also cannot be invoked by a party who can learn of alleged misrepresentations or concealment through review of land records or other public records. *Lowenberg v. Booth, supra, R and B Kapital Development, LLC v. North Shore Community Bank and Trust Company*, 358 Ill.App.3d 912, 921-922 (1st Dist. 2005). To benefit from equitable estoppel, the party claiming it must have had no knowledge or means of knowing of the true facts. *R and B Kapital Development, LLC, supra.* The SBA could have determined the validity of the Old Kent/SBA mortgage through a review of the court file in the Provident foreclosure proceedings. SBA representatives did review the court files regularly and saw the final order prior to dismissal of the case.

47. The subordination agreement contains no representations by the Dahms. They did not sign the agreement and were not parties to the agreement (the two mortgagees were parties to the agreement). <u>Only a representative of the SBA even</u>

10

signed the agreement. As such, an equitable estoppel defense must fail. The Dahms cannot be estopped by representations made by the SBA.

48. Also, the subordination agreement contains no representations or warranties regarding the validity of any SBA mortgage, only that the SBA's interest, if any, would be subordinated to the new mortgagee. The subordination agreement contains no representations at all regarding the validity of the SBA mortgage. There are, literally, no material facts alleged in the subordination agreement or in the allegations of the affirmative defense upon which the SBA could or should rely in regard to the validity of the SBA mortgage.

49. The validity of the mortgage is also a question of law, not fact, and as such, equitable estoppel cannot apply.

50. The SBA personnel have admitted that they did not rely on anything the Dahms said in regard to the mortgage foreclosure proceedings. This is another reason to bar a claim of estoppel. Finally, no one should be entitled to reasonably rely upon representations of law by nonlawyers such as the Dahms.

### K. Conclusion.

51. For the reasons set out above and to be proved at trial, the Dahms request that the Court declare Old Kent/SBA/ First American Mortgage to be void and that Fred Bucholz, the Recorder of DuPage County, Illinois, or his or her successor, be authorized and directed to cancel said mortgage of record and;

63. That the title to the real estate hereinbefore described be quieted, established, and confirmed in the Dahms, free and clear of any claim of First American.

11

Respectfully Submitted,
Ralph and Patricia Best Dahm

By:＿＿＿＿＿/S Joseph P. Selbka＿
　　　　　Joseph P. Selbka

Joseph P. Selbka
Law Offices of Joseph P. Selbka
53 W. Jackson Blvd., Suite 1118
Chicago, Illinois 60604-3565
Phone: 312-788-3310   Fax 312-788-3311
Atty No. 6238063